**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

DAVID CRUZ, ET AL.,

    Plaintiffs,

        v.                                                           CIV. NO. 14-1016(PG)

PUERTO RICO PLANNING BOARD, ET AL.,

    Defendants.

**OPINION AND ORDER**

Before the court is a motion to dismiss filed by the defendants in both their official and individual capacity. See Docket No. 8. For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** the defendants' motion.

**I. BACKGROUND**

On January 9, 2014, plaintiffs Davis Cruz ("Cruz"), Wanda Miranda ("Miranda") and their Conjugal Partnership filed the above-captioned complaint against defendants the Puerto Rico Planning Board ("PRPB"), the Puerto Rico Developmental Disabilities Council (PRDDC), Myrianne Roa ("Roa"),[1] Magdalena Vazquez ("Vazquez"), and Luis Garcia-Pelatti ("Garcia-Pelatti"), in their official and individual capacities. According to the complaint, Cruz was the Executive Director at the PRDDC, and his wife, plaintiff Miranda, held the position of Confidential Secretary I. See Docket No. 1 at ¶¶ 3.1-3.2. Miranda was appointed to this position as part of a reasonable accommodation in favor of Cruz insofar as he has been blind since he was sixteen years old. Id. at ¶¶ 4.14, 4.23.

Both Cruz and Miranda claim they were harassed and terminated from their employment without being afforded their due process rights and because they were affiliated with the New Progressive Party ("NPP"). Id. at ¶ 3.6. Pursuant to 42 U.S.C. § 1983, the plaintiffs now seek compensatory and punitive damages and injunctive relief for the alleged violations of their constitutional

---

[1] In their response to the defendants' motion to dismiss, the plaintiffs concede they do not have a plausible cause of action against co-defendant Roa. See Docket No. 10 at page 8. Thus, all claims against her are hereby **DISMISSED WITH PREJUDICE**.

CIV. NO. 14-1016(PG)                                                    Page 2

rights under the First, Fifth[2] and Fourteenth Amendments. See Docket No. 1. The plaintiffs also lodge claims of disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*. The plaintiffs additionally invoke the court's supplemental jurisdiction over the state-law claims brought pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 and 1803"), P.R. LAWS ANN. tit. 31, §§ 5141 and 5142. See Docket No. 1.

According to the allegations in the complaint, co-defendant Garcia-Pelatti was the President of the PRPB at all relevant times herein. See id. at ¶ 3.8. He was appointed to this position by the current Governor, Alejandro Garcia Padilla, from plaintiffs' opposing party, the Popular Democratic Party ("PDP"). Id. Co-defendant Vazquez is the Human Resources Director of the PRPB. Id. at ¶ 3.9. The PRDDC is alleged to be an instrumentality of the Commonwealth of Puerto Rico, the purpose of which is to provide assistance to individuals with developmental disabilities. Id. at ¶¶ 3.11., 4.1. The plaintiffs allege that pursuant to the Developmental Disabilities Act of 1970, 42 U.S.C. § 15001 *et seq.*, any state that receives federal funds under this Act must establish a Council on Developmental Disabilities and must designate a state agency to provide support to this Council. Id. at ¶ 4.2. In the case at hand, the PRPB was the designated state agency for such purposes. Id. at ¶ 4.3.

After the defeat of the NPP in the 2012 general elections, co-defendant Garcia-Pelatti was appointed President of the PRPB. On or around February of 2013, he allegedly asked plaintiff Cruz to resign. Id. at ¶ 4.15. According to the plaintiffs, Garcia-Pelatti told them that he was being pressured to get rid of those affiliated to the NPP. Id. Plaintiff Cruz refused to resign and continued serving in what he claims was a politically-charged atmosphere. Id. at ¶¶ 4.16-4.17.

Some months thereafter, on June 14, 2013, Cruz allegedly received a phone call from Garcia-Pelatti's secretary requesting his presence at the PRPB to receive a letter. Id. at ¶ 4.18. Plaintiff Cruz responded that he could not attend until June 17th, after the closing ceremony of the Youth Leadership Forum for people with Disabilities, which was taking place at the time. Id.

---

[2]The plaintiffs also request the dismissal of their due process claims under the Fifth Amendment to the Constitution of the United States in their opposition to the defendants' motion to dismiss. See Docket No. 10 at page 8. Therefore, these claims are hereby **DISMISSED WITH PREJUDICE.**

at ¶ 4.19. However, when the plaintiffs were speaking to some Forum participants immediately following the closing ceremony, co-defendant Vazquez and Angel Valle Valle, the Administrative Director of the PRPB, approached them to hand deliver termination letters, which the plaintiffs refused to receive. Id. at ¶ 4.20. The letters were later sent to plaintiffs via certified mail, but purportedly failed to inform them of their due process right to appeal such decision. Id. at ¶ 4.38. Subsequent to his dismissal, plaintiff Cruz was replaced by Roa, who is affiliated with the PDP and is not a disabled individual. Id. at ¶ 4.23.

According to the plaintiffs, all individual defendants were aware of their political affiliation as avid supporters of the NPP. And because both Garcia-Pelatti and Vazquez acted in their official capacities, the plaintiffs aver liability attaches to the PRPB. See Docket No. 1 at ¶ 4.44.

Instead of answering the complaint, the defendants moved to dismiss all claims except for the political discrimination claims against co-defendant Garcia-Pelatti. See Docket No. 8. The plaintiffs filed a response to the defendants' request (Docket No. 10) and the defendants replied (Docket No. 14).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalan v. U.S., 734 F.3d 100, 102 (1st Cir.2013) (quoting FED.R.CIV.P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." Cooper v. Charter Communications Entertainments I, LLC, 760 F.3d 103, 106 (1st Cir.2014) (citing Maloy v. Ballori–Lage, 744 F.3d 250, 252 (1st Cir.2014)) (internal quotation marks omitted). Additionally, courts "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir.2013) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir.2011)).

"To cross the plausibility threshold, the plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged.'" Cooper, 760 F.3d at 106 (citing Maloy, 744 F.3d at 252). See also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, … , on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

"In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir.2011) (citing Twombly, 550 U.S. at 555) (internal quotation marks omitted). That is, the court "need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir.2009) (citing Iqbal, 556 U.S. at 678). "A complaint 'must contain more than a rote recital of the elements of a cause of action,' but need not include 'detailed factual allegations.'" Rodriguez-Vives v. Puerto Rico Firefighters Corps, 743 F.3d 278, 283 (1st Cir.2014) (citing Rodríguez-Reyes v. Molina–Rodríguez, 711 F.3d 49, 53 (1st Cir.2013)). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 556 U.S. at 681).

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 664-664. Nevertheless, when evaluating the plausibility of a legal claim, a court may not "attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely." Ocasio-Hernandez, 640 F.3d at 12-13 (citing Twombly, 550 U.S. at 556). As a result, courts should read the complaint "as a whole" and be cautious not to apply the plausibility standard "too mechanically." See Rodriguez-Vives, 743 F.3d at 283 (citing Garcia-Catalan, 734 F.3d at 101, 103).

### III. DISCUSSION

**A. Section 1983**

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place

CIV. NO. 14-1016(PG)                                                    Page 5

under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982) (internal quotation marks omitted). To prevail in a Section 1983 claim, a plaintiff "must allege facts sufficient to support a determination (i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States." Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir.2005) (quoting Romero–Barceló v. Hernández– Agosto, 75 F.3d 23, 32 (1st Cir.1996)). For Section 1983 liability purposes, "a state employee generally acts under color of state law when, while performing in his official capacity or exercising his official responsibilities, he abuses the position given to him by the State." West v. Atkins, 487 U.S. 42, 49 (1988).

"Public officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Ocasio-Hernandez, 640 F.3d at 16 (internal citations and quotation marks omitted). "Rather, 'only persons who were directly involved in the wrongdoing may be held liable.'" Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 239 (1st Cir.2012) (citing Martinez–Vélez v. Rey-Hernández, 506 F.3d 32, 41 (1st Cir.2007).

Section 1983 claims require that a plaintiff establish three elements for liability to ensue: deprivation of a right, a causal connection between the actor and the deprivation, and state action. See Sanchez v. Pereira–Castillo, 590 F.3d 31 (1st Cir.2009); see also 42 U.S.C. § 1983. The causation element requires that the plaintiff establish (1) that the actions of the defendant deprived the plaintiff of a protected right, and (2) "that the defendant's conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights." Concepción v. Municipality of Gurabo, 558 F.Supp.2d 149, 162 (D.P.R.2007). Moreover, a plaintiff must link each particular defendant to the alleged violation of federal rights. See González–Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir.2005). A plaintiff may do so by indicating any "personal action or inaction [by the defendants] within the scope of [their] responsibilities that would make [them] personally answerable in damages under Section 1983." Pinto v. Nettleship, 737 F.2d 130, 133 (1st Cir.1984).

CIV. NO. 14-1016(PG)                                                    Page 6

**1. Claims against Vazquez**

The plaintiffs here bring suit for the violation of their constitutional rights under the First Amendment, which "insulates public employees who hold nonpolicymaking positions from the vicissitudes of personnel decisions rooted in partisan political concerns." Bergeron v. Cabral, 560 F.3d 1, 7 (1st Cir.2009) (citing Rutan v. Repub. Party of Ill., 497 U.S. 62, 74-76 (1990)). In essence, "[g]overnment officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernandez, 640 F.3d at 10 (citing Rutan, 497 U.S. at 75-76; Welch v. Ciampa, 542 F.3d 927, 938-39 (1st Cir.2008)). Accordingly, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir.2004) (citing Elrod v. Burns, 427 U.S. 347, 350 (1976)).

To establish a claim of political discrimination, "the workers must show that: (1) they and the defendants have 'opposing political affiliations,' (2) the defendants were aware of the workers' political affiliations, (3) an 'adverse employment action' (e.g., an employment termination) occurred, and (4) 'political affiliation was a substantial or motivating factor for the adverse employment action.'" Ocasio-Hernandez v. Fortuno-Burset, 777 F.3d 1, 5 (1st Cir.2015) (citations omitted) ("Ocasio-Hernandez II").

In their motion to dismiss, the defendants argue that the complaint is defective as to co-defendant Vazquez because it lacks any allegation in support of a claim of political discrimination against her. See Docket No. 8 at pages 10-11. Instead, the defendants sustain that the few allegations against Vazquez are simply conclusory. Id. This court agrees.

Firstly, the court is at a loss to find an allegation in the complaint establishing the first element of a political discrimination claim, to wit, that plaintiffs and co-defendant Vazquez have opposing political affiliations. And while the plaintiffs argue in their opposition that Vazquez was unquestionably aware of the plaintiffs' political affiliation in light of their active and public support of the NPP, see Docket No. 10 at page 10, "[a] plausible discrimination claim requires more than an awareness of the plaintiffs' political affiliations. It requires a reasonable inference that the plaintiffs' political affiliation was a substantial or motivating factor in the defendants' conduct." Ocasio-Hernandez, 640 F.3d at 16.

CIV. NO. 14-1016(PG)                                                                                                                        Page 7

The plaintiffs address this causation element by arguing in their response that Vazquez, as Human Resources Director, necessarily had a role in their illegal dismissal. See Docket No. 10 at pages 8-10. To that effect, the plaintiffs allege in the complaint that "[u]pon information and belief, Defendant Magdalena Vazquez, acted and advised Defendant Garcia Pelatti, on issues pertaining to Human Resources including the illegal dismissal of the Plaintiffs. She acted in her individual capacity as well as her official capacity as Human Resources Director of the PRPB." Docket No. 1 at ¶ 4.42.

In support of their argument, the plaintiffs make specific reference to Ocasio-Hernandez, where the First Circuit Court of Appeals stated that the plaintiffs' allegations of political discrimination against a co-defendant who held the Chief of Staff position were adequately pled insofar as a Chief of Staff at La Fortaleza, the plaintiffs' place of employment, "itself indicate[d] his role in personnel management." Ocasio-Hernandez, 640 F.3d at 17. However, Cruz and Miranda's reliance on this language is misguided. In Ocasio-Hernandez, the First Circuit found that, in addition to being Chief of Staff, this co-defendant had, among other things, allegedly lied to the press about the plaintiffs' termination and made disparaging remarks about the prior administration under the opposing party. Id. The court thus concluded that the facts alleged in the complaint showed "above plausibly," id., that each of the named defendants had participated in the decision to terminate the plaintiffs. Id. Notwithstanding, in addition to having to name those who were actually *responsible* for the decision to terminate them, the plaintiffs in Ocasio-Hernandez still had to adequately allege that political affiliation was a motivating factor behind their decision to terminate them. Id. at 17-19.

No doubt exists that Vazquez has a role in personnel management as Human Resources Director of the PRPB. However, "liability cannot rest solely on a defendant's position of authority … ." Id. at 16 (citing Ayala-Rodriguez v. Rullán, 511 F.3d 232, 236 (1st Cir.2007)). The plaintiffs here need also have alleged that Vazquez's participation in this employment action "was substantially motivated by political affiliation," id. at 17, in order to survive defendants' motion to dismiss. To that effect, the First Circuit has "previously explained that a politically charged employment atmosphere 'occasioned by the major political [party] shift … coupled with the fact that plaintiffs and defendants are of competing political persuasions[ ] may be probative of discriminatory animus." Ocasio-Hernandez, 640 F.3d at 17-18 (citing Acevedo-Diaz v. Aponte, 1 F.3d 62, 69 (1st Cir.1993)).

CIV. NO. 14-1016(PG)                                                    Page 8

In the complaint, the plaintiffs allege twice, without much meat, that there was a highly charged political atmosphere within the government offices of PRDDC and PRPB after the 2012 elections. See Docket No. 1 at ¶¶ 4.12, 4.16. However, the only incident that supports this allegation involves co-defendant Garcia-Pelatti - and not Vazquez - asking them to resign due to pressure from his political party, the PDP. See id. at ¶ 4.15. The plaintiffs' failure to plead any allegation showing Vazquez's discriminatory motivation behind the decision to terminate the plaintiffs is detrimental to their endeavor to have their claims against Vazquez survive dismissal under Rule 12.

In their opposition, the plaintiffs simply wish that this court infer that Vazquez's decision to hand the plaintiffs their termination letters in person at the Forum - as opposed to waiting until the next day - is an indication of her discriminatory animus. See Docket No. 10 at pages 8-10. To that effect, the complaint specifically states:

> After the Closing ceremony, Plaintiffs Cruz and Miranda were talking with several participants of the Forum when co-defendant Vazquez and Angel Valle Valle, Administrative Director of the PRPB, approached them to hand deliver a letter. When the plaintiffs asked what were the letters about, defendant Vazquez informed them that they were termination of employment letters, at which point the plaintiffs refused to receive the letters per instructions of the Chairperson of PRDDC. The letters were dated June 14, 2013, with effective date of June 15, 2014[sic], and were later sent via Certified Mail.

Docket No. 1 at ¶ 4.20. The plaintiffs argue in their opposition that it reasonably stems from that allegation that Vazquez tracked down Cruz and Miranda at the Forum to embarrass and humiliate them in front of the Forum's attendees. See Docket No. 10 at page 9. We find the plaintiffs' reasoning is farfetched.

In making our "contextual judgment about the sufficiency of the pleadings," Ocasio-Hernandez, 640 F.3d at 16, this court finds them to be lacking as to co-defendant Vazquez. Despite her potential involvement in the decision to terminate the plaintiffs, the complaint is devoid of any allegation stating her political affiliation or claiming that she made any disparaging remarks regarding the plaintiffs' political party. Simply alleging that she handed the plaintiffs their termination letters is, in this court's judgment, insufficient. To hold otherwise, would be to "shoot the messenger," as the axiom goes. See Gleason v. Scoppetta, No. 12 CV 4123(RJD)(RLM), 2014 WL 5780729 at *2 (E.D.N.Y. November 05, 2014) (finding axiom "don't shoot the

CIV. NO. 14-1016(PG)                                                    Page 9

messenger" applied where conclusory allegations based on "information and belief" against co-defendants did not plausibly establish personal involvement in violation of plaintiff's constitutional rights).

Thus, the defendants' request that the claims against co-defendant Vazquez be dismissed is hereby **GRANTED**, and the claims against her are **DISMISSED WITHOUT PREJUDICE**.

### 2. Fourteenth Amendment Due Process Claims

In their motion to dismiss, the defendants seek that the plaintiffs' due process claims pursuant to the Fourteenth Amendment be dismissed because the "First Amendment claim supersedes the Fourteenth Amendment claim." Docket No. 8 at page 12. The plaintiffs argue in opposition that they have properly alleged to have a property interest in their continued public employment. See Docket No. 10 at page 13. Moreover, the plaintiffs also contend that the defendants' reliance on Albright v. Oliver, 510 U.S. 266 (1994) in their motion is more akin to a request for dismissal of the substantive - not the procedural - due process claim. Id. The court agrees with the plaintiffs.

The Fourteenth Amendment due process guarantee has both procedural and substantive aspects. See Amsden v. Moran, 904 F.2d 748, 753 (1st Cir.1990). "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest in continued public employment cannot be deprived of that interest without due process of law." Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 5-6 (1st Cir.2000) (citing Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, 263 (1st Cir.1987). "In a due process claim stemming from the termination of employment, 'a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule, or contract, that he will continue to be employed.'" Acevedo-Feliciano v. Ruiz-Hernandez, 447 F.3d 115, 121 (1st Cir.2006) (quoting Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 101 (1st Cir.2002). "It is well established, both in Puerto Rico and in federal law, that a person has secured a property right in his employment if he has an expectation of continuity in said employment." Quiles Rodriguez v. Calderon, 172 F.Supp.2d 334, 344 (D.P.R.2001).

In the complaint, the plaintiffs alleged that they had a property right in their respective positions, see Docket No. 1 at ¶ 4.25; that their positions did not entail policy-making determinations, id. at ¶¶ 4.27-4.28; that their termination letters did not inform them of their right to appeal such decision, id. at ¶ 4.38; and that they were not afforded a hearing prior to termination, id. at ¶ 8.3. Absent any argument to the contrary, the court

CIV. NO. 14-1016(PG)                                                    Page 10

finds that the plaintiffs have properly pled a procedural due process claim under the Fourteenth Amendment.

On the other hand, the First Circuit has held that "[t]he substantive due process guarantee functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir.2006) (citing Daniels v. Williams, 474 U.S. 327, 331 (1986)). A "claim is cognizable as a violation of substantive due process only when it is so extreme and egregious as to shock the contemporary conscience." McConkie v. Nichols, 446 F.3d 258, 260 (1st Cir.2006); see also Albright v. Oliver, 510 U.S. 266, 272 (1994)) ("Substantive due process claims generally have something to do with 'matters relating to marriage, family, procreation, and the right to bodily integrity' rather than property or employment issues."); Bibiloni Del Valle v. Puerto Rico, 661 F.Supp.2d 155, 185 (D.P.R.2009) ("The very nature of this constitutional protection has caused that substantive due process protection be used sparingly.").

The First Circuit has held that a plaintiff's substantive due process claims, in connection with allegations of political discrimination, are coextensive with his First Amendment claims. See Ramírez v. Arlequín, 447 F.3d 19, 25 (1st Cir.2006)) (citing Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 46 (1st Cir.1992)). Substantive due process "is an inappropriate avenue of relief" when the governmental conduct at issue is covered by the First Amendment. See Pagan v. Calderon, 448 F.3d at 33. "It is the First Amendment, not the Fourteenth Amendment, that guards individuals against state-sponsored acts of political discrimination or retaliation … . Thus, when allegations of political discrimination and retaliation are covered by the First Amendment, those allegations cannot serve as a basis for a substantive due process claim." Quiles-Santiago v. Rodriguez-Diaz, 851 F.Supp.2d 411, 427 (D.P.R. 2012) (internal quotation marks and citations omitted).

The court does not glean from the facts alleged in the complaint that the plaintiffs set forth a substantive due process claim. To the extent that such a claim was raised, it is, however, **DISMISSED WITH PREJUDICE**.

**B. American with Disabilities Act**

Plaintiffs here assert a cause of action under ADA. In their complaint, the plaintiffs allege that Cruz is blind and is thus disabled, and that plaintiff Miranda was appointed to her position as part of a reasonable accommodation. See Docket No. ¶¶ 4.13-4.14, 9.2. They also allege that they

CIV. NO. 14-1016(PG)                                                    Page 11

were qualified to perform the duties of the job and that they were performing such duties satisfactorily. Id. at ¶ 4.36-4.37. The plaintiffs claim that the defendants discriminated against plaintiff Cruz by "refusing to maintain [him] in his position," id. at ¶ 9.4, and eventually terminating his employment, as well as plaintiff Miranda's. Id. at ¶¶ 9.4-9.5. Finally, the plaintiffs set forth that Cruz was replaced by an individual without disabilities. Id. at ¶ 4.23.

The defendants seek to dismiss the claims under ADA. See Docket No. 8. In their motion to dismiss, the defendants argue that the plaintiffs have failed to provide any factual averments in support of their ADA claim, and thus, have failed to comply with the pleading standards set forth in Twombly and Iqbal. See Docket No. 8 at page 13. In fact, the defendants complain that the plaintiffs do not even specify which of the five (5) titles contained in the ADA is applicable to this case. See id. at page 13. In addition, the defendants sustain that no individual liability attaches under ADA pursuant to applicable law. Id.

Although the plaintiffs admit in their response that there is no individual liability under ADA, Docket No. 10 at page 14, the plaintiffs oppose the dismissal of their ADA claims. According to them, they have pled the elements of an ADA claim under Title I, and have thus "passed the line between possibility and plausibility in asserting a regarded-as violation of the ADA."[3] Id.

To state a claim of disability discrimination under Title I of the ADA, plaintiff Cruz needed to allege facts showing that: "(1) he was disabled within the meaning of the Act; (2) he could perform the essential functions of his job, with or without reasonable accommodation, and (3) the employer took adverse action against him, in whole or in part, **because of** his disability." Roman-Oliveras v. Puerto Rico Elec. Power Authority, 655 F.3d 43, 48 (1st Cir.2011) (citing Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir.2008); Bailey v. Ga.-Pac. Corp., 306 F.3d 1162, 1166 (1st Cir.2002)) (emphasis ours). There is no question that Cruz is disabled under the meaning of the Act and that an adverse action was taken against him, to wit, his and Miranda's discharge from their respective positions. Plaintiff Cruz also alleged that he was qualified for the job and was able to perform such duties

---

[3] The court notes that the complaint is devoid of any reference to a claim of disability discrimination under the "regarded-as" prong.

CIV. NO. 14-1016(PG)                                                    Page 12

with the help of plaintiff Miranda, who was appointed to her position as a reasonable accommodation for Cruz.

However, absent from the complaint is any allegation of causation: that he was terminated, in whole or in part, *because* he was blind. And although the court is not faulting the complaint for failing to establish a prima facie case of disability discrimination - a focus that is decidedly misplaced at the pleading stage, see Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (1st Cir.2013) - we simply find that the absence of such an allegation renders the claim implausible. See id. at 54 ("In a nutshell, the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim.").

Actually, the complaint does not even contain a conclusory statement to that effect. And beyond the timing of their termination, the plaintiffs give us no facts - *e.g.*, negative comments, complaints, unfavorable expressions by their superiors in performance reviews - that would lead this court to conclude that Cruz's disability was a factor behind the plaintiffs' removal from their positions. See Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 720 (1st Cir.2014) (finding plaintiff failed to sufficiently show causal connection between her FMLA-leave-taking and her termination to push her claim beyond the plausibility threshold).

Instead, the plaintiffs allege in the complaint that Cruz's termination was "**solely** motivated by political reasons," Docket No. 1 at ¶ 4.22 (emphasis ours); that Cruz's dismissal "was **clearly** politically motivated," id. at ¶ 4.24; and, that Cruz and Miranda were terminated from their positions "for the **sole** reason that they did not belong to the political party of the new PDP Governor, Garcia Padilla," id. at ¶ 4.29.

The plaintiffs' complaint offers nothing to connect Cruz's disability to their termination. Therefore, the defendants' request that this claim be dismissed is hereby **GRANTED** and all claims under ADA are hereby **DISMISSED WITHOUT PREJUDICE**.

### IV. CONCLUSION

For the reasons stated above, the defendants' motion (Docket No. 8) is hereby **GRANTED IN PART AND DENIED IN PART**. The court, thus, concludes as follows:

Plaintiffs' claims against co-defendant Myrianne Roa are voluntarily **DISMISSED WITH PREJUDICE**;

    Plaintiffs' due process claims under the Fifth Amendment are voluntarily **DISMISSED WITH PREJUDICE;**

    Plaintiffs' substantive due process claims under the Fourteenth Amendment are **DISMISSED WITH PREJUDICE;**

    Plaintiffs' claims against co-defendant Magdalena Vazquez are **DISMISSED WITHOUT PREJUDICE;** and,

    Plaintiffs' claims under ADA are **DISMISSED WITHOUT PREJUDICE.**

    The case shall thus continue as to the plaintiffs' political discrimination claims pursuant to the First Amendment and procedural Due Process claims under the Fourteenth Amendment against co-defendants the Puerto Rico Planning Board, the Puerto Rico Developmental Disabilities Council and Garcia-Pelatti.

    **IT IS SO ORDERED.**

    In San Juan, Puerto Rico, April 15, 2015.

*S/ JUAN M. PEREZ-GIMENEZ*
JUAN M. PEREZ-GIMENEZ
SENIOR U.S. DISTRICT JUDGE