DAVID CRUZ, ET AL.,

     Plaintiffs,

        v.

PUERTO RICO PLANNING BOARD, ET AL.,

     Defendants.

CIV. NO. 14-1016(PG)

## OPINION AND ORDER

Before the court is defendants' motion for summary judgment (Docket No. 62), plaintiffs' opposition (Docket No. 81) and defendants' reply thereto (Docket No. 70). For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** the defendants' motion.

### I.    BACKGROUND

January 9, 2014, plaintiffs David Cruz ("Cruz"), Wanda Miranda ("Miranda") and their Conjugal Partnership filed the above-captioned complaint against defendants the Puerto Rico Planning Board ("PRPB"), the Puerto Rico Developmental Disabilities Council (PRDDC or "Council"),[1] Myrianne Roa[2] ("Roa"), Magdalena Vazquez ("Vazquez"), and Luis Garcia-Pelatti ("Garcia-Pelatti"), in their official and individual capacities. According to the complaint, plaintiffs were employees of the PRDDC and were both affiliated with the New Progressive Party ("NPP"). Cruz was the Executive Director at the PRDDC, and his wife, plaintiff Miranda, held the position of Confidential Secretary I. Miranda was appointed to this

---

[1] The PRDDC is alleged to be an instrumentality of the Commonwealth of Puerto Rico, the purpose of which is to provide assistance to individuals with developmental disabilities. See Docket No. 25 at ¶¶ 3.10., 4.1. The plaintiffs allege that pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 1970 ("DDA" or "the Act"), 42 U.S.C. § 15001 et seq., any state that receives federal funds under this Act must establish a Council on Developmental Disabilities and must designate a state agency to provide support to this Council. Id. at ¶ 4.2. In the case at hand, the PRPB was the designated state agency for such purposes. Id. at ¶ 4.3.

[2] Claims against this co-defendant were dismissed with prejudice. See Docket No. 16.

position as part of a reasonable accommodation in favor of Cruz insofar as he has been blind since he was sixteen years old.

Co-defendant Garcia-Pelatti was the President of the PRPB at all relevant times herein. Garcia-Pelatti was appointed to this position by Governor Alejandro Garcia Padilla, member of the Popular Democratic Party ("PDP"), which is plaintiffs' opposing party. Co-defendant Vazquez was the Human Resources Director of the PRPB at all times relevant herein.

Both Cruz and Miranda claim in the complaint they were harassed and terminated from their employment without being afforded their due process rights and because of their political affiliation to the NPP. According to the plaintiffs, all individual defendants were aware that plaintiffs were avid supporters of the NPP. Subsequent to Cruz's dismissal, Garcia-Pelatti replaced plaintiff Cruz with Ms. Roa, who is a member of the PDP.

Pursuant to 42 U.S.C. § 1983, the plaintiffs seek compensatory and punitive damages, as well as injunctive relief for the alleged violations of their constitutional rights under the First, Fifth[3] and Fourteenth Amendments. See Docket No. 25. Finally, the plaintiffs additionally invoke the court's supplemental jurisdiction over the state-law claims brought pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico ("Articles 1802 and 1803"), P.R. LAWS ANN. tit. 31, §§ 5141 and 5142. See Docket No. 1.

The defendants now move for summary judgment in their favor and the plaintiffs oppose this request.

## II.   STANDARD OF REVIEW

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which entitles a party to judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the party who bears the burden of proof at trial is faced with a properly constituted summary judgment motion, defeating the motion depends

---

[3] The claims brought pursuant to the Fifth Amendment were dismissed with prejudice. See Docket No. 16.

on her ability to show that such a dispute exists." <u>Geshke v. Crocs, Inc.</u>, 740 F.3d 74, 77 (1st Cir.2014)(citing <u>Borges ex rel. S.M.B.W. v. Serrano-Isern</u>, 605 F.3d 1, 5 (1st Cir.2010)).

If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. <u>See</u> <u>Suarez v. Pueblo Int'l</u>, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. <u>See</u> <u>Rochester Ford Sales, Inc. v. Ford Motor Co.</u>, 287 F.3d 32, 38 (1st Cir.2002). The court reviews the record "as a whole," and "may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 135 (2000). This is so because credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. <u>Id.</u>

### III. FINDINGS OF FACT

The court found the following relevant facts to be undisputed:

1.  According to Section 125 of Public Law 106-402 or the Act, each State that receives assistance on behalf of said Act is required to create a council and "shall designate a State agency that shall, on behalf of the State, provide support to the Council."

2.  Section 125(c)(9) of the Act states that the Council shall, consistent with State law, recruit and hire a Director to perform all duties and functions therein established.

3.  Executive Order No. 1997-19 of the Governor of the Commonwealth of Puerto Rico was enacted to appoint the Puerto Rico Planning Board

(PRPB) as the State agency that would provide the Puerto Rico Developmental Disabilities Council (PRDDC) with support in the achievement of its plans and endeavors.

4.     The salaries of all Council members are paid with federal funds.

5.     The Memorandum of Understanding between the PRPB and the PRDDC establishes the roles and responsibilities of the State agency, which includes, in its Section VIII, all matters pertaining to the designation of the Executive Director of the Council. Subsection (b) of the Section VIII establishes that the Executive Director shall be a permanent government employee.

6.     Plaintiff David Cruz is affiliated to the NPP. He was elected Senator for the New Progressive Party from January 1989 – January 1993. From January 1993 – January 2001 David Cruz was appointed by then NPP Governor Pedro Rossello to the trust position of Advocate for Persons with Disabilities (Procurador de Personas con Impedimentos). From 2001 to 2008 he was a consultant for the Senate of Puerto Rico, and from January of 2009 until July of 2009 he held the trust position of Executive Aide at the office of the Ombudsman. All of the abovementioned positions were under NPP administrations.

7.     During the 2012 general elections, David Cruz was the Chairperson on Disability Affairs Committee for writing the NPP platform.

8.     As a member of the PRDDC, plaintiff Cruz participated in an extraordinary assembly, held on June 15, 2011, where the Board voted to remove then Executive Director Myrianne Roa from her position.

9.     Plaintiff Cruz was nominated to be the Executive Director of the PRDDC during an extraordinary meeting of the Board of Directors.

10.    Cruz was appointed Director of the Council during this extraordinary meeting.

11.    Thereafter, on July 21, 2011, plaintiff Cruz was appointed to a trust position at the PRPB as Bureau Director of Location Consultations, or Site Consulting Office. During his tenure, Cruz never performed the functions of said position. According to job posting number 05-28, Bureau Director was a trust position ascribed to the PRPB.

12.    Plaintiff Cruz admits that he was not qualified to occupy the position of Bureau Director of the Location Consultations at the PRPB because he had no experience or any academic background in that area.

13. Plaintiff Wanda Miranda is affiliated to the NPP and she has been a polling officer for many years. She has also attended political activities for the NPP.

14. On July 21, 2011, plaintiff Miranda was appointed Confidential Secretary I at the PRPB.

15. The Confidential Secretary I position, held by Miranda, was a trust position, ascribed to the Board Members of the PRPB.

16. Plaintiff Miranda admits that she never performed the duties of a Confidential Secretary I, the position she held.

17. During Cruz's tenure, all personnel that worked at the Council held career positions, except for him and Wanda Miranda, who held trust positions.

18. Plaintiff Cruz had no career position to return to once his designation to the trust position he held ended.

19. On January 2013, the former Governor of Puerto Rico, Hon. Alejandro J. Garcia-Padilla, named co-Defendant Luis Garcia-Pelatti President of the Planning Board.

20. Garcia-Pellatti worked on the platform of Sila Calderon when she ran for Governor under the PPD. He was then appointed by Sila Calderon to the Planning Board as associate member of the Board, and then was appointed as advisor to Calderon's Chief of Staff Cesar Miranda.

21. Garcia Pelatti helped candidates for the PDP during the 2000 and 2012 elections, but not for the NPP nor PIP.

22. Garcia Pellatti understands that normally trust positions come with political affiliation.

23. Co-defendant Vazquez was appointed as Human Resources Director in the Planning Board on an interim basis in January of 2013, and as of right in March of 2013.

24. Vazquez is affiliated with the PDP, and as such, she participates in political activities, writes comments in social media, and attends meetings for PDP employees.

25. There is a group of employees that responds to the PDP at the Planning Board known as "PDP Public Employees" ("Servidores Publicos Populares") and Vazquez attended their meetings.

26. Partisan politics are discussed at the Planning Board, especially during the electoral period.

27.   Vazquez knows that plaintiff Cruz ran for Senator under the NPP.

28.   Co-defendant Garcia-Pelatti met plaintiff Cruz for the first time on
      January 2013 in Santurce, Puerto Rico, when he went to a meeting at
      the Council.

29.   Garcia-Pellati knew that plaintiff Cruz had been an NPP
      representative, and member of the NPP. He also knew that Cruz had
      been appointed as Ombudsman by then NPP Governor Pedro Rossello.

30.   Garcia-Pelatti met plaintiff Miranda on February 14th, 2013 at a
      meeting with plaintiff Cruz.

31.   During a meeting between Cruz and Garcia-Pelatti in February or March
      of 2013, plaintiff Cruz suggested that plaintiff Miranda and himself
      be designated to transitory positions in the Council roster.

32.   During the same meeting, Garcia-Pelatti informed Cruz that the
      Council had received a federal report that classified the Council at
      high risk and the federal funds had stopped.

33.   Plaintiff Cruz received copy of the Federal Notice of Award of High
      Risk to the PRDDC.

34.   Plaintiffs did not file an internal complaint after the February 14th,
      2013 meeting with Garcia-Pelatti.

35.   Vazquez did not attend the meetings where Garcia-Pelatti's team told
      him that Cruz and Miranda could not be appointed to transitory
      positions. See Dockets No. 62-1 at ¶ 109, 60-20 at page 85, 82 at
      page 23.

36.   At the time Vazquez made the recommendation that David Cruz and Wanda
      Miranda be dismissed, she did not review any documents regarding the
      Council, its formation nor the non-interference section of the
      federal law applicable to the Council, nor did she discuss it with
      the Federal entity that oversees the Council.

37.   Co-defendant Vazquez was notified about the decision to terminate
      plaintiffs' appointments and ordered to draft their termination
      letters.

38.   It was Garcia-Pelatti's determination to dismiss plaintiffs Cruz and
      Miranda. Vazquez brought to the attention of Garcia-Pellatti David
      Cruz and Wanda Miranda's appointments at the Council and she discussed
      with him the hybrid nature of the appointments and the relationship
      of the Planning Board and the Council.

39. After various unsuccessful attempts to meet with plaintiffs Cruz and Miranda to personally hand deliver their termination letters, co-defendant Vazquez was instructed to go to Aguas Buenas on June 14, 2013, to personally deliver the termination letters. The letters were signed by Garcia-Pelatti.

40. Cruz's dismissal letter terminated his employment from the position of Bureau Director at the Planning Board. See Docket No. 83-10.

41. Miranda's dismissal letter terminated her employment from the position of Confidential Secretary at the Planning Board. See Docket No. 83-11.

42. Vazquez went on June 14, 2013 to an activity held by the Council to hand Wanda Miranda and David Cruz their dismissal letters.

43. Garcia-Pelatti does not have the authority to fire the Executive Director of the Council; the Council is the one who appoints and removes. Garcia-Pelatti's administrative function is to create that position.

44. Garcia-Pelatti knew that appointing and removing the Executive Director of the Council is a faculty and authority of the Council, and not his.

45. As to appointments of personnel at the Council, the Executive Director of the Council informs the Human Resources department of their need of an employee, the Planning Board does the job posting and receives the applications, then Executive Director of the Council performs the interviews and has the authority to choose the employee. The Planning Board President nor its Executive Director have any involvement in the selection and appointment process of Council employees.

46. After the termination of his appointment, plaintiff Cruz has not participated in any job posting at the PRPB.

47. Co-defendant Vazquez recommended Roa to be the interim Director of the Council after plaintiff's Cruz's termination because she was the only person that had experience in the Council that worked within the agency.

48. From 2003 to 2013, co-defendant Garcia-Pelatti had no personal relationship with Roa.

49. Garcia-Pelatti was aware the Roa was litigating a case against the Planning Board and against the Council regarding political

discrimination, and still appointed her to substitute plaintiff David Cruz as Executive Director of the Council.

50. Roa is a PDP supporter, she acknowledges everyone knew it at the Planning Board and she went to some PDP activities. There is a Committee of PDP employees at the Planning Board.

51. Roa had performed the duties of the Executive Director of the Council since February 3rd, 2005 until 2011 when she was removed from her position.

52. Back in 2005, Roa had competed in a job posting for the position of Administrative Executive at the Planning Board.

53. By October 31, 2005, Roa was appointed to the position of Administrative Executive of the Planning Board but was still doing the daily duties of the Executive Director of the Council.

54. Since December 3, 2006, Roa holds a Regular Career Position as Administrative Executive.

55. Roa's duties between 2005 and 2011, as Executive Director, are the same as the ones she is currently doing as Executive Director of the Council.

56. Roa filed a complaint in 2011 against the Planning Board, the Council, Council members and others alleging political discrimination and that her dismissal was due to unlawful intervention of the Planning Board with the Council. The complaint also alleged that she was affiliated to the PDP and that she was substituted by David Cruz, who was affiliated to the NPP.

57. In 2013, Myrainne Roa was approached by Garcia-Pellatti at the Planning Board, who informed her "he had some issues" with the Council and he wanted her to help with the Council and fill the position.

58. Since 2013, Roa was performing the duties of Executive Director, on an interim basis.

59. On June 14, 2013, Garcia-Pellatti sent a letter to the Council informing them that he had dismissed David Cruz, leaving vacant the position of Executive Director of the Council, and therefore he was appointing Myrainne Roa as the Executive Director of the Council.

60. On June 17, 2013, Garcia-Pellatti received a letter from the President of the Board of Directors of the Council, Arturo Deliz, explaining that he had no faculty in law to dismiss the Executive Director of

the Council.

61.  On February 17, 2016, the Council ratified Roa as Executive Director
     and was designated by Garcia-Pelatti effective March 1, 2016.

## IV.  DISCUSSION

Section 1983 "provides a remedy for deprivations of rights secured
by the Constitution and laws of the United States when that deprivation
takes place under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory." Lugar v. Edmondson Oil Co., Inc., 457
U.S. 922, 924 (1982) (internal quotation marks omitted). To prevail in a
Section 1983 claim, a plaintiff "must allege facts sufficient to support
a determination (i) that the conduct complained of has been committed under
color of state law, and (ii) that [the alleged] conduct worked a denial of
rights secured by the Constitution or laws of the United States." Cepero-
Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir.2005) (quoting Romero–Barcelo
v. Hernandez–Agosto, 75 F.3d 23, 32 (1st Cir.1996)). For Section 1983
liability purposes, "a state employee generally acts under color of state
law when, while performing in his official capacity or exercising his
official responsibilities, he abuses the position given to him by the
State." West v. Atkins, 487 U.S. 42, 49 (1988).

Section 1983 claims require that a plaintiff establish three elements
for liability to ensue: deprivation of a right, a causal connection between
the actor and the deprivation, and state action. See Sanchez v. Pereira-
Castillo, 590 F.3d 31 (1st Cir.2009); see also 42 U.S.C. § 1983. The
causation element requires that the plaintiff establish (1) that the
actions of the defendant deprived the plaintiff of a protected right, and
(2) "that the defendant's conduct was intentional, grossly negligent, or
amounted to a reckless or callous indifference to the plaintiff's
constitutional rights." Concepcion v. Municipality of Gurabo, 558 F.Supp.2d
149, 162 (D.P.R. 2007). Moreover, a plaintiff must link each particular
defendant to the alleged violation of federal rights. See González–Piña v.
Rodríguez, 407 F.3d 425, 432 (1st Cir.2005). A plaintiff may do so by
indicating any "personal action or inaction [by the defendants] within the
scope of [their] responsibilities that would make [them] personally
answerable in damages under Section 1983." Pinto v. Nettleship, 737 F.2d

130, 133 (1st Cir.1984).

## A. First Amendment Claims

The plaintiffs here sue for the violation of their constitutional rights under the First Amendment. "The First Amendment generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity." Heffernan v. City of Paterson, N.J., 136 S.Ct. 1412, 1416 (2016). In essence, "[g]overnment officials are forbidden by the First Amendment from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." Ocasio-Hernandez v. Fortuno–Burset, 640 F.3d 1, 10 (1st Cir.2011) (citing Rutan v. Republican Party of Illinois, 497 U.S. 62, 75–76 (1990); Welch v. Ciampa, 542 F.3d 927, 938–39 (1st Cir.2008)). Accordingly, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Galloza v. Foy, 389 F.3d 26, 28 (1st Cir.2004) (citing Elrod v. Burns, 427 U.S. 347, 350 (1976)).

"To prove his claim of political discrimination, [plaintiff] must show that (1) he and the defendants have 'opposing political affiliations,' (2) the defendants knew his affiliation, (3) he experienced an adverse employment action, and (4) his political affiliation was a 'substantial' or 'motivating' factor for the adverse action." Santiago-Diaz v. Rivera-Rivera, 793 F.3d 195, 199 (1st Cir. 2015) (citing Ocasio–Hernández v. Fortuño–Burset, 777 F.3d 1, 5 (1st Cir.2015)). "If the plaintiff has sufficient evidence to establish a prima facie case, the burden then shifts to the defendants to show that '(i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional.'" Reyes-Orta v. Puerto Rico Highway & Transp. Auth., 811 F.3d 67, 73 (1st Cir. 2016) (citing Velez–Rivera v. Agosto-Alicea, 437 F.3d 145, 152 (1st Cir.2006) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286–87 (1977)). "Finally, the burden shifts back to the plaintiff to 'discredit the … nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor.'" Pierce v.

Cotuit Fire Dist., 741 F.3d 295, 302 (1st Cir. 2014) (citing Padilla-Garcia
v. Guillermo Rodriguez, 212 F.3d 69, 77 (1st Cir.2000)).

### 1. Prima Facie Case

In their motion for summary judgment, defendants seek the dismissal
of plaintiffs' First Amendment claims of political discrimination on the
grounds that they have not met their burden of establishing a prima facie
case. Although they do not challenge that the plaintiffs suffered an
adverse employment action, the defendants deny that Garcia-Pelatti belongs
to an opposing political party, that they have knowledge of the plaintiffs'
political affiliation or that political affiliation motivated their
determination to dismiss the plaintiffs. The court will address these
arguments in turn.

In their motion, the defendants set forth that Garcia-Pelatti does
not have a political affiliation. See Docket No. 62 at page 10.   In
response, the plaintiffs point to Garcia-Pelatti's "political activism" by
way of his work for PDP candidates that ran for office between 2000 and
2012. In addition, the plaintiffs note that Garcia-Pelatti was appointed
to several trust positions under PDP Governors, such as Sila Calderon and
Alejandro Garcia-Padilla. See Docket No. 81 at page 21; Findings of Fact
No. 19-21. "It is no secret that political leaders most often choose
political allies to fill important policymaking positions." Grajales v.
Puerto Rico Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012). Drawing all
reasonable inferences in plaintiffs' favor, a jury could find that Garcia-
Pelatti, "who was named to a prestigious trust position by a PDP hierarch
under a PDP administration, was a member of the PDP." Id. "Answering this
question calls for '[c]redibility determinations, the weighing of the
evidence, and the drawing of legitimate inferences from the facts' — all
tasks for the jury, not the judge." Garcia-Gonzalez v. Puig-Morales, 761
F.3d 81, 99 (1st Cir. 2014)(citing Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 255 (1986)). Issues of fact thus remain as to Garcia-Pelatti's
political affiliation.

Co-defendants Garcia-Pelatti and Vazquez also deny knowing the
plaintiffs' political affiliation. See Docket No. 62. at pages 11-12.

However, the plaintiffs negate this assertion on several grounds. First, the plaintiffs claim that Garcia-Pellatti "informed them that he was being pressured by the Popular Democratic Party member's organization within the Puerto Rico Planning Board to fire all NPP members hired by the previous administration who were in management positions." Docket No. 81 at page 11. Taking plaintiffs' version of events as true would allow a rational factfinder to conclude that Garcia-Pelatti was aware of their political affiliation. Garcia-Pelatti, however, denies making such statements. See Docket No. 62-1 at ¶ 101.

Other facts relevant to the knowledge prong include that both Garcia-Pelatti and Vazquez knew that plaintiff Cruz ran for an elective post under the NPP, see Findings of Fact No. 27, 29; that both plaintiffs were appointed to trust positions under NPP administrations and Vazquez was an NPP polling officer for many years, see Findings of Fact No. 6, 11, 13-14; that partisan politics were discussed at the Board, see Findings of Fact No. 26; and, that there was a group of PDP-affiliated employees at the Board called "Servidores Publicos Populares," in which Vazquez partook, see Findings of Fact No. 25.

The First Circuit Court of Appeals has "consistently held that circumstantial evidence can suffice to show a defendant's knowledge of a plaintiff's political party." Ocasio-Hernandez, 777 F.3d at 7 (citing Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 44 (1st Cir.2007)). It has "also held that a government official's knowledge that an employee was hired by a prior administration — when considered in tandem with other relevant facts — could certainly help prove the defendant's knowledge of the employee's political affiliation." Ocasio-Hernandez, 777 F.3d at 7 (citing Anthony v. Sundlun, 952 F.2d 603, 606 (1st Cir.1991) ("Given the nature of the [employees'] positions, the defendants' knowledge that the plaintiffs had originally been hired by the previous [ ] administration, the timing of the moves, the identities of those consulted, the lack of any legitimate reason for ousting the incumbents, and the partisan connections of the replacement workers, it seems disingenuous to suggest that [the defendant] acted without regard to the politics of the situation.")). See also Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 44 (1st Cir.2007) (noting that a jury could reasonably infer that the

defendant was aware of the plaintiff's NPP affiliation based on testimony that the plaintiff spoke openly about her political views and sat in the NPP portion of the de facto segregated cafeteria); Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir.2006) (holding reasonable jury could conclude that political affiliation of plaintiffs was sufficiently well-known that the defendants were aware of it where evidence of relatively small workplace); Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 99 (1st Cir.2014) (genuine issue of fact as to whether defendant knew of plaintiff's political affiliation where plaintiff publicly displayed affiliation and defendant had "ready source" for such knowledge).

The court finds that plaintiffs have set forth a number of different facts from which a jury could infer that defendants became aware of plaintiffs' political affiliation. In addition, the plaintiffs have testified that Garcia-Pelatti made statements indicating that their termination was due to their political affiliation. See Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 81 (1st Cir.2006) (finding sufficient evidence of political discrimination where witness testified that defendants "made statements to her indicating that her demotion was politically motivated"). Although the defendants' deny making these statements and having knowledge of the plaintiffs' political affiliation, "it is for the jury to resolve such issues of credibility." Rodriguez-Marin, 438 F.3d at 81.

Finally, the defendants contend that Cruz's termination was not politically-motivated but responded to the fact that his appointment – after Roa's "hasty and rushed removal" - was illegal in the first place. See Docket No. 62 at pages 23-24. In contrast, the court notes that the plaintiffs were terminated a few months after the new administration took office and Cruz was replaced by Roa, a PDP-affiliated employee. Also, whether Garcia-Pelatti indeed made comments to plaintiffs regarding the reasons for their removal from their posts is in dispute. As a result, the court finds a genuine issue exists as to whether political affiliation was a substantial motivating factor for the adverse actions taken against defendants. See Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 240 (1st Cir. 2012) ("While mere temporal proximity between a change of administration and an adverse employment action is insufficient to

establish discriminatory animus […] it is relevant to whether political affiliation was a substantial or motivating factor in that adverse employment decision[.]") (citations omitted); Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97 (1st Cir.1997)(noting that Plaintiffs had presented enough evidence to avoid summary judgment because "the plaintiffs were all members of the adverse party … their superiors knew this, and … their duties were given to active supporters of the party in power").

## 2. Mt. Healthy Defense

In their motion for summary judgment, the defendants raise Mt. Healthy defenses in support of their request that this court summarily dismiss the plaintiffs' claims. "A defendant can defeat liability under *Mt. Healthy* 'by showing that plaintiffs' positions were obtained in violation of Puerto Rico law and that, even if political animus was a factor, defendants would have taken corrective action anyway against every employee whose position was obtained in violation of law.'" Reyes-Orta, 811 F.3d 67, 73 (1st Cir. 2016) (citing Sanchez-Lopez v. Fuentes-Pujols, 375 F.3d 121, 131 (1st Cir.2004); see also Reyes-Pérez v. State Ins. Fund Corp., 755 F.3d 49, 54–55 (1st Cir.2014) (affirming summary judgment in defendants' favor where the government employer conducted agency-wide, merit-principle audits of all personnel, not just individuals of a particular party); Soto-Padró v. Pub. Bldgs. Auth., 675 F.3d 1, 6 (1st Cir.2012) ("[E]ven if a plaintiff shows an impermissible political motive, he cannot win if the employer shows that it would have taken the same action anyway, say, as part of a bona fide reorganization.")). "To establish a successful *Mt. Healthy* defense, it is the defendant's responsibility to persuade the factfinder that it would have made the same decision even if the illegitimate reason had not been a factor." Reyes-Orta, 811 F.3d at 73–74. "Because all reasonable inferences are drawn in the non-movant's favor at summary judgment, … a defendant cannot win at summary judgment unless the only reasonable interpretation of the evidence is that the plaintiff would have been dismissed in any event for nondiscriminatory reasons." Id. at 74 (citing Padilla-Garcia, 212 F.3d at 73). "The evidence by which the plaintiff established her prima facie case may suffice for a factfinder to

infer that the defendant's reason is pretextual and to effectively check summary judgment." Padilla-Garcia, 212 F.3d at 78.

With regards to plaintiff Cruz, the defendants argue that regardless of his political affiliation, his lack of experience and qualifications justified his removal from the trust position he occupied at the Board. In addition, the defendants contend that Cruz's illegal appointment to the Executive Director position at the Council and the federal report Garcia-Pelatti received classifying the Council at "high risk" justified his dismissal. See Docket No. 62 at pages 17-24. In response, the plaintiffs make reference to Garcia-Pelatti's statements referencing the political motivations behind the plaintiffs' dismissals. The plaintiffs also poke holes at the defendants' assertion that Roa's removal from the Executive Director position back in 2011 and Cruz's subsequent appointment were illegal. See Docket No. 81 at pages 25-28. Both matters are clearly in dispute and there are issues of fact preventing the court from reaching any conclusions as to the same.

Nevertheless, it is uncontested that Garcia-Pelatti's termination letter dismissed plaintiff Cruz from the Bureau Director position he held at the PRPB. See Finding of Fact No. 40; Docket No. 83-10. As President of the PRPB, Garcia-Pelatti presumably had the authority and was justified to dismiss him from said position given Cruz's admission that he was not qualified to occupy said post. See Findings of Fact No. 12; Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 153-154 (1st Cir. 2006) (affirming district court grant of summary judgment where plaintiff would have been terminated, regardless of political affiliation, because she was unqualified for her position). However, the record is devoid of any letter from anyone informing Cruz of his termination from the Executive Director position at the Council. Moreover, the defendants admit that Garcia-Pelatti knew that he lacked the authority to discharge the Executive Director of the Council. See Findings of Fact No. 43-44. In fact, Garcia-Pelatti received a letter from the President of the Board of the Council shortly after Cruz's termination from the PRPB informing Garcia-Pelatti that he lacked the faculty to dismiss the Executive Director of the Council. See Findings of Fact No. 60. Therefore, if Cruz's appointment was purportedly illegal according to the defendants, by the same token, so was Cruz's termination

by Garcia-Pelatti. In light of the foregoing, the court finds that plaintiff Cruz has sufficiently discredited the defendants' reasons for removing him from the Executive Director position at the Council. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir.2000) (noting that plaintiff may prove pretext by demonstrating weaknesses, implausibilities, inconsistencies, incoherency or contradictions in the employer's proffered legitimate reasons such that a fact finder would infer that the employer did not act for the asserted nondiscriminatory reasons). The defendants' request to dismiss Cruz's First Amendment political discrimination claims is thus **DENIED**.

Now, plaintiff Miranda's situation is a different story. In their motion for summary judgment, the defendants contend that Miranda was appointed to the trust position of Confidential Secretary at the PRPB to assist Cruz, who is blind. Because Cruz was dismissed from the position he held at the PRPB, her services were no longer necessary. Moreover, the defendants point out that Miranda admits to not performing the duties of her position, and thus, her dismissal was justified. See Docket No. 62 at page 24. The plaintiffs' oppose the defense raised by the defendants by making reference to Garcia-Pelatti's comments and claiming that, inasmuch as Cruz's dismissal from the Council was contrary to law, it follows that the dismissal of his "reasonable accommodation" is also contrary to law. See Docket No. 81 at page 28.

The facts pertaining to plaintiff Miranda's employment merit some clarification. First of all, as opposed to what the plaintiffs allege in the complaint (Docket No. 25 at ¶ 3.2), Miranda was not an employee of the Council. Or so the court gathers from the uncontroverted facts and documents submitted. It stems from the record of this case that Miranda's Confidential Secretary position was a trust position ascribed to the PRPB. See Finding of Fact No. 14; Docket No. 62-13. She assumed the post on July 21st, 2011, the same day her husband was appointed Bureau Director at the PRPB, a position Cruz has readily admitted he was unqualified for. Therefore, it is reasonable to conclude that the PRPB, and not the Council, is the agency that provided plaintiff Cruz with the "reasonable accommodation" of having his wife as his assistant due to his blindness. Ergo, Garcia-Pelatti had the authority and was reasonably justified to

terminate Cruz's employment at the PRPB. The court thus finds that the defendants' defense concerning Miranda's employment holds water, especially in light of Miranda's admission that she was not performing the duties of the position she was hired and getting paid for. <u>See</u> Findings of Fact No. 16.

The defendants have successfully established a non-discriminatory reason that would have resulted in the adverse employment action taken against Miranda, regardless of her political affiliation. Although Miranda's controverted assertions about Garcia-Pelatti's politically-charged comment during a meeting are enough to establish that the defendants may have had an impermissible political motive, Miranda fails to show that it was substantial or that the legitimate grounds asserted by the defendants are a mere ruse. As a result, Miranda's political discrimination claims against defendants must be summarily dismissed and the defendants' request to that effect is **GRANTED.**

**B. Due Process Claims**

In the complaint, the plaintiffs allege they had property interests in their respective positions and were dismissed without being afforded a hearing in violation of their Due Process rights. <u>See</u> Docket No. 25 at ¶ 8.1-8.6. In their motion for summary judgment, the defendants request the dismissal of the plaintiffs' procedural due process claims under the Fourteenth Amendment. The defendants argue that the plaintiffs were classified as "trust" employees, and thus, had no constitutionally protected interest in their position. <u>See</u> Docket No. 62 at pages 13-15.

"Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest in continued public employment cannot be deprived of that interest without due process of law." <u>Figueroa-Serrano v. Ramos-Alverio</u>, 221 F.3d 1, 5-6 (1st Cir.2000)(<u>citing</u> <u>Kercado-Melendez v. Aponte-Roque</u>, 829 F.2d 255, 263 (1st Cir.1987)). "The root requirement of the Due Process Clause is that an individual must be provided notice and an opportunity to be heard prior to being deprived of any significant property interest." <u>Garcia-Gonzalez v. Puig-Morales</u>, 761 F.3d 81, 88 (1st Cir. 2014) (citations and quotation marks omitted). To establish a

procedural due process violation, a plaintiff must, first, identify a protected liberty or property interest and, second, that the defendant, acting under color of state law, deprived him or her of that interest without constitutionally adequate process. See Hightower v. City of Boston, 822 F.Supp.2d 38, 56 (D.Mass.2011), aff'd, 693 F.3d 61 (1st Cir.2012)(citing González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir.2011)).

In Puerto Rico, public employees fall generally in two categories: those who hold "career" positions and those who hold "trust" or "confidence" positions. See Costa-Urena v. Segarra, 590 F.3d 18, 22 (1st Cir.2009) (citing Figueroa-Serrano, 221 F.3d at 3 n. 1). "Career employees … hold 'permanent' positions." Costa-Urena, 590 F.3d at 22 (citing Maymi v. P.R. Ports Auth., 515 F.3d 20, 24 n. 2 (1st Cir.2008)). As such, these employees "may only be removed for cause and after certain procedures are followed." Id. (citations omitted). The First Circuit has explained that career employees are entitled to the protections of the First and Fourteenth Amendments. See id. at 22-23 (citing Rodriguez-Marin v. Rivera-Gonzalez, 438 F.3d 72, 79-80 (1st Cir.2006)("The First Amendment protects the right of public career employees … to engage in political activities without fear of adverse employment actions."); Colon-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir.2006)(recognizing that under Puerto Rico law, career employees have a property interest in their continued employment that is protected by the Due Process Clause of the Fourteenth Amendment)). Therefore, "'before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner.'" Gonzalez-Droz, 660 F.3d at 13 (internal quotations and citations omitted).

On the other hand, "Puerto Rico 'trust' employees participate in policymaking and can be hired and fired on political grounds." Medina-Velazquez v. Hernandez-Gregorat, 767 F.3d 103, 110 (1st Cir.2014)(citing Uphoff Figueroa v. Alejandro, 597 F.3d 423, 430 n. 7 (1st Cir.2010)). The First Circuit has "recognized that political affiliation is an appropriate

requirement for … effective performance in such trust positions." <u>Medina-Velazquez</u>, 767 F.3d at 110 (internal citations omitted).

In his complaint, Cruz only complains of his termination from the Executive Director position at the PRDDC, not the Bureau Director position at the PRPB. <u>See</u> Docket No. 25. It is undisputed that according to the Memorandum of Understanding between the PRDDC and the PRPB, the Executive Director of the PRDDC shall be a **permanent** government employee. <u>See</u> Finding of Fact No. 5. "It is well established, both in Puerto Rico and in federal law, that a person has secured a property right in his employment if he has an expectation of continuity in said employment." <u>Quiles Rodriguez v. Calderon</u>, 172 F.Supp.2d 334, 344 (D.P.R.2001). However, the record is devoid of any notification of termination from this position or of proof that Cruz was given an opportunity to be heard prior to his discharge. In their motion, the defendants fail to address or explain these lapses. And although defendants make a passing reference in their discussion to the illegality of Cruz's designation to the post,[4] it was already found that co-defendant Garcia-Pelatti lacked the authority to dismiss Cruz from the Executive Director position at the PRDDC. Needless to say, "[i]n law as in life, two wrongs do not make a right." <u>Mulero-Abreu v. Puerto Rico Police Dep't</u>, 675 F.3d 88, 92 (1st Cir. 2012). In light of these inconsistencies in the record, the defendants request for dismissal of Cruz's Due Process claims is thus **DENIED**.

With regards to Miranda, it is undisputed that the Confidential Secretary position she occupied was classified as a trust position. <u>See</u>

---

[4] The court understands that "[t]o possess constitutionally protected property interests in their career positions, the plaintiffs must have valid claims to those positions. … An employee's claim is not valid if the hire contravened Commonwealth laws and regulations, which include the Puerto Rico Personnel Act and agency regulations promulgated under that Act." <u>Costa-Urena v. Segarra</u>, 590 F.3d 18, 27 (1st Cir. 2009) (<u>citing</u> <u>Kauffman v. Puerto Rico Tel. Co.</u>, 841 F.2d 1169, 1173 (1st Cir.1988); <u>see also</u> <u>Vazquez-Valentin v. Santiago-Diaz</u>, 459 F.3d 144, 149 (1st Cir.2006) (recognizing that hirings made "in violation of Commonwealth laws and regulations normally are null and void ab initio") (citation omitted); <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 54 (1st Cir.1990) ("We have regularly held that, under Puerto Rico law, government employees hired illegally to permanent or career positions are neither invested with property interests in continued employment nor entitled to the due process protections which inure to their legally hired counterparts.")). However, material issues of fact prevent the court at this stage to determine if Cruz has a valid claim to his designation as Executive Director of the Board of the PRDDC after Roa's removal.

Finding of Fact No. 15. In the plaintiffs' opposition, however, they claim that Miranda's position was improperly classified. The court agrees with the plaintiffs' assertion that position's classification is not necessarily conclusive. The First Circuit has held that the designation of a position as "trust" or "career" under Puerto Rico law, although entitled to some deference, is not dispositive in determining the federal question of whether a position is afforded constitutional protection. See Velazquez v. Mun. Gov't of Catano, 91 F.Supp.3d 176, 193 (D.P.R.2015) (citing Duriex-Gauthier v. Lopez-Nieves, 274 F.3d 4, 8 (1st Cir.2001), Ruiz Casillas v. Camacho Morales, 2004 WL 3622480 (D.P.R.2004)). "[W]hether a government position is trust/confidential/policymaking does not depend upon such loose-fitting labels as substance of the duties inherent in the position itself." Roman v. Delgado Altieri, 390 F.Supp.2d 94, 105 (D.P.R.2005) (citing Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 12 (1st Cir.1996))). "The official job description is a presumptively reliable basis for determining the actual functions of the position." Mendez-Aponte v. Bonilla, 645 F.3d 60, 66 (1st Cir. 2011).

In support of their Due Process claims, however, the plaintiffs have stated, without more, that they were not privy to confidential information nor were they in policymaking positions that would justify their classification of trust employees. See Docket No. 81 at pages 24-25. The plaintiffs have provided the court with no evidence in support of this argument. No job descriptions nor statements attesting to Miranda's functions and duties are on record.

"A person is only entitled to procedural due process if she can establish that the government deprived her of a constitutionally protected interest." Costa-Urena v. Segarra, 590 F.3d 18, 26 (1st Cir. 2009). "[T]o demonstrate a constitutionally protected property interest, a plaintiff must identify a 'legitimate claim of entitlement' to the property in question and must show more than an abstract need, desire, or unilateral expectation of that property." Garcia-Gonzalez v. Puig-Morales, 761 F.3d 81, 88 (1st Cir. 2014) (citing Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 8 (1st Cir.2005)). Having Miranda failed to establish that she had a protected property interest, her due process claim must fail. See Garcia-Gonzalez, 761 F.3d at 88 (citing Redondo-Borges, 421

F.3d at 11 ("Because the plaintiffs identify no constitutionally protected property interest, it is unnecessary to delve any deeper into the section 1983 inquiry."). As a result, the defendants' request to dismiss Miranda's Due Process claims is **GRANTED**.

### C. Qualified Immunity

In their motion for summary judgment, defendants claim they are entitled to qualified immunity, because they have not violated any constitutional right of plaintiffs. They argue the actions they took were objectively reasonable and in accordance with the law. <u>See</u> Docket No. 62 at pages 27-29.

"Long-standing principles of constitutional litigation entitle public officials to qualified immunity from personal liability arising out of actions taken in the exercise of discretionary functions." <u>Glik v. Cunniffe</u>, 655 F.3d 78, 81 (1st Cir.2011). The First Circuit applies a three-part test to determine whether a public official is entitled to qualified immunity, asking "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." <u>Guillemard-Ginorio v. Contreras-Gomez</u>, 490 F.3d 31, 38 (1st Cir. 2007) (<u>quoting</u> <u>Mihos v. Swift</u>, 358 F.3d 91, 102 (1st Cir.2004)). If all three questions are answered in the affirmative, then qualified immunity is not available. <u>See</u> <u>Mihos</u>, 358 F.3d at 110.

It has long been held that patronage dismissals of non-policymaking, non-confidential government employees is proscribed by the First Amendment to the United States Contitution. <u>See</u> <u>Branti</u>, 445 U.S. at 518; <u>Rutan</u>, 497 U.S. at 64-65; <u>Ocasio-Hernandez</u>, 640 F.3d at 13. Thus, the analysis turns on the objective reasonableness of the defendants' actions. "The objective reasonableness inquiry is highly fact specific, … and often requires [an] examination of the information possessed by the defendant officials." <u>Diaz-Garcia v. Surillo-Ruiz</u>, 113 F.Supp.3d 494, 525 (D.P.R. 2015) (internal quotation marks omitted) (<u>citing</u> <u>Swain v. Spinney</u>, 117 F.3d 1, 9-10 (1st

Cir.1997); Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir.2009); Kelley v. LaForce, 288 F.3d 1, 7 (1st Cir.2002)).

At this juncture, the court is unable to render a determination as to qualified immunity insofar as questions of fact that are within the sole province of the jury remain regarding the facts known to the defendants at the time of the events in question. That is, although defendants argue in their favor that they were acting pursuant to the law and that Cruz had no protected property interests in his position, they also knew they had no authority to terminate Cruz from the Executive Director of the PRDDC. And, as previously explained, there is a factual issue as to whether Cruz's political affiliation substantially motivated his termination.

> Although we recognize that the immunity question should be resolved, where possible, in advance of trial, pre-trial resolution sometimes will be impossible because of a dispute as to material facts. … In such a case, the factual issues must be decided by the trier of fact, thereby precluding summary judgment. … Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella.

Kelley v. LaForce, 288 F.3d 1, 7 (1st Cir. 2002) (internal citations and quotation marks omitted).

Summary judgment based on qualified immunity would be inappropriate at this stage. Consequently, the defendants' request to be shielded from suit on qualified immunity grounds is **DENIED WITHOUT PREJUDICE.**

### V.   CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment (Docket No. 62) is hereby **GRANTED IN PART AND DENIED IN PART**. Plaintiff Miranda's claims under the First and Fourteenth Amendment are hereby **DISMISSED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 31, 2017.

S/ JUAN M. PÉREZ-GIMÉNEZ
JUAN M. PÉREZ-GIMÉNEZ
SENIOR U.S. DISTRICT JUDGE